IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL W. TOLOMEO and SERAFIN CHAVEZ, individually, and as representatives of a Class of Participants and Beneficiaries of the RR Donnelley Savings Plan,<br><br>Plaintiffs,<br><br>v.<br><br>R.R. DONNELLEY & SONS, INC., et al.,<br><br>Defendants. | Case No. 20-cv-7158<br><br>Judge Mary M. Rowland |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Michael Tolomeo and Serafin Chavez bring this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), individually and as representatives of a class of participants and beneficiaries of the R.R. Donnelley Savings Plan, against R.R. Donnelley & Sons, its Board of Directors, and its Benefits Committee (collectively, "Defendants") for violations under the Employee Retirement Income Security Act of 1974 ("ERISA"). Count I alleges that Defendants breached their fiduciary duty of prudence by allowing the Savings Plan to pay excessive recordkeeping fees. Count II alleges that R.R. Donnelley and its Board of Directors breached their duty to monitor. Defendants move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). [54]. For the reasons stated herein, Defendants' motion to dismiss is denied.

1

I. Background

A. Facts

The following factual allegations taken from the operative complaint [51] are accepted as true for the purposes of the motion to dismiss. *See Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021).

R.R. Donnelley & Sons Company ("R.R. Donnelley") offers its employees the opportunity to invest in a 401(k) plan known as the R.R. Donnelley Savings Plan (the "Plan"). [51] ¶ 4. Plaintiffs Michael Tolomeo and Serafin Chavez are former employees of R.R. Donnelly and participants in the Plan under 29 U.S.C. § 1002(7). *Id.* ¶¶ 19–22.

The Plan's administrator is the Benefits Committee of R.R. Donnelley & Sons Co. ("Benefits Committee"). *Id.* ¶ 28. The Benefits Committee includes R.R. Donnelley's Treasurer and Vice President, who are hired by R.R. Donnelley through R.R. Donnelley's Board of Directors ("Board of Directors"). *Id.* ¶¶ 28–29. Defendants R.R. Donnelly, the Benefits Committee, and the Board of Directors are fiduciaries of the Plan under 29 U.S.C. § 1002(21)(A). *Id.* ¶¶ 4–5.

At the end of 2020, the Plan had 16,452 participants and approximately $1.3 billion in assets. *Id.* ¶35. The Plan is a defined contribution plan where the value of participants' retirement benefits is "determined by the market performance of employee and employer contributions, less expenses." *Id.* ¶ 33 (quoting *Tibble v. Edison Int'l*, 575 U.S. 523, 525 (2015)). One of the expenses associated with managing the Plan is hiring a third-party service provider known as a "recordkeeper"

2

to assist with administering the retirement plan benefit to their employees. *Id.* ¶ 42. Great-West Life & Annuity Insurance, LLC, which does business as Empower Retirement ("Empower"), has been the Plan's recordkeeper. *Id.* ¶¶ 23, 42.

There are two types of essential recordkeeping and administrative ("RK&A") services provided to the Plan. The first is bundled RK&A services, meaning the fees are charged on a per participant basis regardless of usage, and include a variety of standard services. *Id.* ¶¶ 44, 48.[1] Recordkeepers developed these bundled RK&A offerings to satisfy all the needs of "mega" 401(k) plans worth more than $500 million like the Plan. *Id.* ¶¶ 26, 42. The second is ad hoc RK&A services, meaning the services are payable by usage, and include services such as loan processing and other individualized services. ¶¶ 45–46.

Recordkeepers earn the vast majority of their fees from providing bundled RK&A services as opposed to ad hoc RK&A services. *Id.* ¶ 49. The market for bundled RK&A services has become increasingly price competitive for plans with a sizable number of participants because they provide the same standard services. *Id.* ¶ 58. Thus, for "mega" 401(k) plans like the Plan, "any minor variations in the level and quality of RK[&]A services . . . has little to no material impact on the fees charged by recordkeepers." *Id.* ¶ 47. In fact, "[a]ll recordkeepers quote fees for the [b]undled RK[&]A services on a per participant basis without regard for any individual differences in services requested" because recordkeepers treat them as

---

[1] The following standard services are provided in bundled RK&A services: recordkeeping, transaction processing, administrative services, participant communications, maintenance of an employer stock fund, plan document services, plan consulting services, accounting and audit services, compliance support, and compliance testing. [51] ¶ 44.

3

"inconsequential from a cost perspective to the delivery of [those] services." *Id.* ¶ 48. Therefore, the bundled RK&A fee rate provides plan fiduciaries with the best way to make "apples-to-apples comparisons" of proposed fee rates. *Id.* ¶ 51.

Plaintiffs allege that Defendants failed to monitor the recordkeeping fees to ensure they were reasonable and authorized the Plan to pay unreasonable and excessive fees relative to the services received. *Id.* ¶ 68. The Plan received a "standard package" of bundled RK&A services from Empower "of a nearly identical level and quality to other recordkeepers who service other mega plans." *Id.* ¶ 55. However, the Plan's RK&A fees were excessive when compared with the fees paid for a similar level and quality of service by other comparable plans with a similar number of participants and similar amount of money under management. *Id.* ¶¶ 67, 106, 109. Plaintiffs provide tables with comparable plans based on plan sponsor disclosures, participant fee disclosures, and Form 5500 filings and the accompanying financial statements. *Id.* ¶¶ 105, 110. From 2014 to 2020, the Plan paid Empower an average of $67 per participant for RK&A services, while comparable plans paid an average of $31. *Id.* ¶¶ 107–08. From 2016 through 2020, the Plan paid Empower an average of $88 per participant for RK&A services, while comparable plans paid an average of $33. *Id.* ¶¶ 132–33.

### B. Procedural History

Plaintiffs commenced this action in December 2020 and filed an Amended Complaint in February 2021. [1]; [17]. The Amended Complaint alleged claims relating to (1) recordkeeping fees, (2) managed account fees, and (3) plan disclosures.

4

[17] ¶ 4. Defendants moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) [20], and the Court denied Defendants' motion in January 2022. [27]. As to recordkeeping fees, the Court highlighted Plaintiffs "allege[] not only that the retirement plan services fees were unreasonably high in comparison to the fees allegedly paid by similarly sized plans for the same level of services but also that those unreasonably high fees are the result of a deficient process in selecting a retirement plan service provider." *Id.* at 2. In August 2022, Plaintiffs filed the operative Fourth Amended Complaint alleging breach of the fiduciary of prudence (Count I) and breach of the duty to monitor (Count II) relating to excessive recordkeeping fees. [51].[2] Defendants again move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). [54].

## II. Standard

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all

---

[2] The Fourth Amended Complaint, filed pursuant to an agreement between the parties, dropped Plaintiffs' managed account fees and inadequate disclosures claims. [50]. In addition, pursuant to agreement, Defendants did not oppose certification of a non-opt-out class solely with respect to the claim of excessive recordkeeping fees. *Id.*

well-pleaded facts as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Lax*, 20 F.4th at 1181. However, the court need not accept as true "statements of law or unsupported conclusory factual allegations." *Id.* (quoting *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021)).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Deciding the plausibility of the claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

### III. Analysis

In moving to dismiss, Defendants argue that Plaintiffs fail to sufficiently allege that (1) the Plan's fees were excessive in relation to the services provided, and (2) there was an imprudent process for selecting a recordkeeper. [55]. The Court finds Plaintiffs have adequately pled the allegations in the operative complaint.

#### A. Fiduciary Duty of Prudence (Count I)

In Count I, Plaintiffs allege that Defendants breached their fiduciary duty of prudence. To state a breach of the fiduciary duty of prudence under ERISA, a plaintiff must plead "(1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the plaintiff." *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016). The fiduciary duty of prudence includes "a continuing duty to monitor plan expenses and 'incur only costs that are

6

reasonable in amount and appropriate' with respect to the services received." *Hughes v. Northwestern Univ.*, 63 F.4th 615, 631 (7th Cir. 2023) (quoting *Tibble v. Edison Int'l*, 843 F.3d 1187, 1197 (9th Cir. 2016)). "If the fiduciaries fail to remove an imprudent investment from the plan within a reasonable time, they breach their duty." *Hughes v. Northwestern Univ.*, 142 S. Ct. 737, 738 (2022) (citing *Tibble*, 575 U.S. at 529–30).

As an initial matter, Defendants posit that *Hughes v. Northwestern Univ.,* 63 F.4th 615 (7th Cir. 2023) ("*Hughes II*"), did not announce a "new pleading standard." [80] at 1. The Court disagrees because *Hughes II* itself described its "newly formulated pleading standard." 63 F.4th at 631. *Hughes II* instructed lower courts that "[t]o plead a breach of the duty of prudence under ERISA, a plaintiff must plausibly allege fiduciary decisions outside a range of reasonableness. How wide that range of reasonableness is will depend on the circumstances . . . prevailing at the time the fiduciary acts. The discretion accorded to an ERISA fiduciary will necessarily be context specific." *Id.* at 630 (cleaned up). The Court significantly found that "[w]here alternative inferences are in equipoise—that is, where they are all reasonable based on the facts—the plaintiff is to prevail on a motion to dismiss. This is because, at the pleadings stage, we must accept all well-pleaded facts as true and draw reasonable inferences in the plaintiff's favor. A court's role in evaluating pleadings is to decide whether the plaintiff's allegations are plausible—not which side's version is more probable." *Id.* 629–30 (cleaned up).

7

With this instruction in mind, the Court turns to assessing the plausibility of Plaintiffs' complaint. Another case in this area before *Hughes II* was *Albert v. Oshkosh Corp.*, 47 F.4th 570 (7th Cir. 2022). In *Albert*, the plaintiff pled breach of fiduciary duty, alleging that defendant, Oshkosh Corporation and its 401(k) plan fiduciaries, paid higher recordkeeping fees than nine comparator plans with a similar number of participants and total assets. 47 F.4th at 579. Specifically, Oshkosh paid an average annual recordkeeping fee of $87 per participant, while the comparator plans paid an average annual recordkeeping fee of $32 to $45 per participant. *Id.* The court dismissed because there were no "allegations as to the *quality or type* of recordkeeping services the comparator plans provided." *Id.* (emphasis added). The Seventh Circuit noted it has "repeatedly emphasized that the cheapest investment option is not necessarily the one a prudent fiduciary would select."[3] *Id.*

After the parties here briefed Defendants' motion to dismiss, the Seventh Circuit decided *Hughes II*, referenced above. The *Hughes II* plaintiffs alleged that defendants' two plans collectively paid between four to five million dollars a year in recordkeeping fees and a more reasonable amount would have been one million. 63 F.4th at 631. Unlike in *Albert*, the *Hughes II* plaintiffs pled that "[t]here are numerous recordkeepers in the marketplace who are equally capable of providing a high level of service to large defined contribution plans like the Plans." *Id.* at 632. Further,

---

[3] The *Albert* court relied on *Smith v. CommonSpirit Health,* 37 F.4th 1160, 1169 (6th Cir. 2022), and *Forman v. TriHealth, Inc.,* 40 F.4th 443, 449 (6th Cir. 2022), that both found plaintiffs failed to state duty of prudence claims because they failed to allege the fees were excessive relative to the services provided. *Albert v. Oshkosh Corp.*, 47 F.4th 570, 580 (7th Cir. 2022).

8

plaintiffs alleged that because these services are "commoditized . . . recordkeepers primarily differentiate themselves based on price, and will aggressively bid to offer the best price in an effort to win the business, particularly for jumbo plans like the Plans." *Id.* The *Hughes II* court found the excessive recordkeeping fee claim survived dismissal based on these allegations along with additional allegations relating to the consolidation of recordkeeping fees.[4] *Id.* at 632–33. Although *Hughes II* is not factually identical to this case, the Seventh Circuit in *Hughes II* made clear that that to state excessive recordkeeping fees claim under ERISA, "a plaintiff must provide enough facts to show that a prudent alternative action was *plausibly available*, rather than actually available." *Id.* at 630 (emphasis added).

Defendants argue that the evolving case law requires dismissal of Plaintiffs' duty of prudence claim because the complaint fails to allege plausible facts that the alleged comparator plans received the same quality or level of services as the Plan. [55] at 8. This ignores the lesson of *Hughes II*. Plaintiffs allege the fungible nature of RK&A fees—that the Plan received a standard bundled RK&A services with "nearly identical level and quality to other recordkeepers who service other mega plans." [51] ¶ 55. Plaintiffs state that the market for "mega" 401(k) plans is "price competitive" because "recordkeepers offer the same bundles and combinations of services as their competitors." *Id.* ¶ 58. That any differences are minor and immaterial to the price

---

[4] The *Hughes II* plaintiffs provided examples of other university plans that reduced recordkeeping fees by consolidating to a single recordkeeper and cited industry experts that recommended consolidation to reduce overall fees. *Hughes v. Northwestern Univ.*, 63 F.4th 615, 632 (7th Cir. 2023).

comparisons in virtually all cases. *Id.* ¶ 53. Allegations that recordkeeping services for mega 401(k) plans are fungible, and the same services could have been provided by other comparator recordkeepers were missing in *Albert*.[5] Further, Plaintiffs rely on these benchmarks to suggest an imprudent decision-making process. *See Hughes II*, 63 F.4th at 633 ("[A] fiduciary who fails to monitor the reasonableness of plan fees and fails to take action to mitigate excessive fees may violate the duty of prudence.") In short, Plaintiffs here like the *Hughes II* plaintiffs "maintain that the market is competitive with equally capable recordkeepers who can provide comparable services for less." *Id.* at 633.

Defendants also argue that documents used by Plaintiffs to determine the comparator plans' rates contradict Plaintiffs' contention that the Plan and comparator plans received the same services because the service codes listed on tax documents (Form 5500s) are not the same. [55] at 11.[6] For example, Defendants assert that the Desecret plan listed one service code for recordkeeping, while the Thermo Fischer Scientific plan listed sixteen service codes that include trustee services and investment management. [55] at 11–12; [55-6]; [55-7]. But what is significant at this stage of the proceeding is that Deseret and Thermo Fischer

---

[5] Other courts in this district relied on this distinction prior to the Seventh Circuit's decision in *Hughes II*. *See Coyer v. Univar Solutions USA Inc.*, No. 22-CV-362, 2022 WL 4534791, at *2, *5 (N.D. Ill. Sept. 28, 2022) (allegation that the plan paid higher RK&A fees than comparable plans with "virtually the same package of services" was sufficient to state a claim).

[6] When ruling on motions to dismiss, courts may also consider documents attached to the pleadings without converting the motion to dismiss into a motion for summary judgment, so long as the documents are referred to in the complaint and central to the plaintiff's claims. *See Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014); Fed. R. Civ. P. 10(c).

10

Scientific recordkeeping fees per participant were $25 and $20, respectively. [51] ¶105. This supports Plaintiffs' allegation that recordkeeping fees are based on the number of participants and "any difference in recordkeeping fees between comparable plans is not explained by the level and quality of services each recordkeeper provides." *Id.* ¶ 143. Defendants' argument about the tax documents may prove persuasive at a later stage of the litigation, however at the pleading stage the Court accepts all well-pleaded facts as true and draws reasonable inferences in Plaintiffs' favor.

The Court finds that Plaintiffs have plausibly alleged the recordkeeping fees were unreasonably excessive.

### B. Failure to Monitor (Count II)

In Count II, Plaintiffs allege R.R. Donnelley and its Board of Directors failed to adequately monitor the Benefits Committee. Defendants' sole argument in support of dismissal is that this claim necessarily fails because Plaintiffs failed to state a plausible claim for breach of fiduciary duty in Count I. [55] at 12. The Court has found Count I adequately pled and therefore Count II may proceed too.

### IV. Conclusion

For the stated reasons, Defendants' motion to dismiss [54] is denied. Defendants are directed to answer the complaint by June 5, 2023. Stay of discovery [68] is lifted and Parties should file a joint status report by June 20, 2023, updating the court on the status of discovery.

E N T E R:

Dated: May 15, 2023

_____
MARY M. ROWLAND
United States District Judge